Good morning, ladies and gentlemen. This is the time for arguments in the hearing on bankruptcy of the United States v. Zavala, Carty. The case was scheduled on a somewhat expedited basis, and so we understand that Judge Silverman and Berzon are with us by phone. Is that correct? Yes, I'm here. We can't hear you. We can't hear very well. If you could speak up a little, Judge Berzon, we would appreciate it. Okay, can you hear me now? Yes, that's better. Good. All right, and we understand counsel is ready to proceed, and so would counsel please do so. Good morning, Your Honors. May it please the Court, I'm Jeffrey Green for Defendant Carty. We have a division of labor today that has me with 20 minutes and Mr. Dennis Charney for Appellant Zavala with 10 minutes. I'll try and preserve five minutes for rebuttal, also assuming that we're not again visited by the Blue Angels. There are a number of issues, and maybe the place to start, a number of issues with which we are in agreement with our colleagues on the other side of the aisle. Those include the fact that the Court has jurisdiction to hear these appeals, that the reasonableness standard applies, that the reasonableness standard applies both to the procedures employed by the district court and to the length of sentence, and that also another point of agreement is that the district court should consider all of the Section 3553A factors. Where we are in dispute is whether there should be a substantial weight given to the guidelines, whether there should be a presumption of reasonableness given to the guidelines, and exactly what the Section 3553C requirements are with respect to what the district court should say on the record or what it must put on the record, how fulsome the record must be. And then finally, the importance and effect of the parsimony clause. And I would like to start this morning where the Supreme Court so often tells all of us we must start, and that is with the plain language of the statute. Section 3553A lists seriatim factors that district judges are to take into account when sentencing, and as Justice Scalia said in the Booker opinion, that list admits no order of priority. The government here today would ask you to elevate the seventh factor on the list. The seventh factor on the list to a super priority status. We submit that the plain language of the statute does not permit that in any way, shape, or form. The statute also has as its first and fundamental provision the parsimony clause. The district court shall impose a sentence that is sufficient but not greater than necessary to execute the purposes of Section 3553A-2. The things that the statute doesn't do is set forth any reasonableness standard for appeal. That was obviously implied in the Booker opinion. The other thing it doesn't do is give, as I said earlier, any primacy to the guidelines. So we're here today. Counsel, let me ask you a question about that. You quoted from Justice Scalia's dissenting opinion, or dissenting in part, and I wonder why we wouldn't start with Justice Breyer's opinion, the switch that saved the guidelines. He says, excise two specific statutory provisions, the provision that requires sentencing courts to impose a sentence within the guidelines and the provision that sets forth standards of review on appeal. With these two sections excised, the remainder of the Act satisfies the court's constitutional requirements. Why doesn't that mean that we just change the word shall in 3553B to should generally change the standard of review by deleting the controls on that, and the rest of what Congress did sticks? Because the Supreme Court excised 3553B. It says that it excises the specific provision that requires the courts to impose a sentence within the guidelines range, but I don't see where all of B does that. It looks like only that shall in the first sentence does that. I would agree as to the reading of 3553B, but disagree as to the reading of Booker. Booker quite clearly says, I don't have the reference immediately at hand, though, that those provisions are 3742E and 3553B. I do have them in my hand. It's on page 16 if you want to get it handy. Okay. It looks to me as though you're asking us to delete a whole lot of law that Congress wrote, and that I don't know if we can delete. The mandatory provisions of the guidelines, said Justice Breyer, and I would also say that there's quite a lot of back and forth in the opinion, which demonstrates that 3553B is out of the picture, because there's a lot of discussion both between Justice Breyer and Justice Scalia and the other dissenters as to what remains with respect to 3553A. As Your Honor might remember, Justice Scalia spends a lot of time talking about how much discretion district courts now have under 3553A. It's not a majority opinion that he wrote. No, it isn't a majority opinion, although he was in the constitutional majority. I would agree with your point there. It was not a majority opinion, but it is a dialogue back and forth, Your Honor. As I read it, Justice Stevens said, if it's like Blakely, it's unconstitutional. Justice Breyer said, it's not like Blakely because we can excise the mandatory part and leave the rest alone, and that was it. And make the guidelines one among the factors. I mean, the other things that Justice Breyer does say in the opinion, and I do have this at hand on page 263 and 264, is that the district judge shall consider the guidelines together with all of the other factors in section 3553A. Now, that makes no reference, Your Honor, to the excise provision 3553B. And that pretty clearly demonstrates that the court considered that provision. What Breyer says with this excision that he requires at page 16 of the U.S. edition, he then says on what you cite as 263 or page 20, he says, it will thereby promote uniformity in the sentencing process. And if all we have is 3553, I'm thinking when I was a district judge before and after the guidelines, in the before, would 3553 do anything? Counsel, perhaps you were looking for the statement by Justice Breyer where it says, after referring to sections 3531B1 and 3742E, then Justice Breyer says, with these two sections excised, the remainder of the act satisfies the court's constitutional requirements. Is that what you have in mind? Yes, it is. And I would supplement that by 263 and 264, where the court clearly identifies the other factors to be considered in sentencing, which answers the question also about discretion. And those factors are the 3553A factors. Does Justice Breyer also go on in addressing the remedy part, following on what Judge Reinhart said, after you do the excising, he mentions the specific statutory sections. He says, in effect, it's so modified the Sentencing Reform Act makes the guidelines effectively advisory. It requires the sentencing court to consider guideline ranges, but it permits the court to tailor the sentence in light of the other statutory concerns as well. Taking those two things together, considering the ranges, but permitting the court to tailor in light of the other factors, what, in your view, is the standard set by the Supreme Court through that language? The standard for what a district court should do is to consider each of the factors with equal weight and apply the facts and circumstances to the case to determine, in a kind of modified totality of the circumstances test, how much weight each of those factors should get. At the outset, they all get equal weight. There's nothing in the statute that says they should get more weight. The government suggests that the guidelines should get more weight, and perhaps, I'll say for the sake of argument, perhaps that might be a good idea given what appears to be Congress's desire to avoid unwanted disparities. I have a response to that, but I'll assume that. If that's what Congress wanted, it certainly is that ample time since Booker to do something about Booker. That's true. That's been nothing. In fact, Senator Stensenbrenner introduced legislation just two days ago. I hope it doesn't get promoted. We have to read the act as it was written, taken together with Booker. Unless Congress changes it to say one of these factors should have more weight than the other. That's exactly our point. It would not, however, preclude the district judge from deciding, not as a presumption, but as a matter of the individual case, to give the guidelines more weight, would it, in an individual case? That's precisely correct. It would not in an individual case. How would we review? I mean, let's say a district judge did precisely that, said, you know, in this case I think the guidelines range deserve particular weight. Then how do we review that decision? And I realize I've now jumped from trial court to appeal, but I'd like to sort of follow it vertically just to get an idea of what would happen. And I'll see if I can make the jump with you. Justice Breyer says that the reasonableness standard will apply across the board and that the appellate courts should consider the 3553A factors. So what an appellate court should do, as we explain in our brief, is take an independent look at the 3553A factors. I stress that doesn't mean that the appellate court should have to, you know, devise its own sentence behind a veil of ignorance and then determine and then lift the veil and look at the district court. I thought your brief said exactly that. Our brief, if we said that, I'll modify it now to say that what the. . . I sort of liked it. To modify it to say. . . That's why I got your brief to say that basically the appellate court should look. . . I'm sorry? Basically the appellate court should look and devise its own sentence and then see whether the district court sentence is still within reasonable range of that. And certainly the district court. . . But I don't want you to lose track of my question, which was really directed specifically to Judge McFarland and Judge McHugh's question. He said, you know, in a particular case, a district court can say I'll give extra deference to the guidelines. Okay? So that happens. The question now comes to an appeal, and you standing there representing the defendants say, no, this is not an appropriate case to give extra deference to guidelines. How do we review that? You review it, again, by looking at the 3553A factors. I will, as appellate counsel, point out 3553A factors that I believe remove the guideline sentence from the range of reasonable measure. But I assume you will have done that in the district court. And I assume that you would not expect us, independently de novo, to look at the 3553A factors and figure out on our own initiative whether the district court got it right. No. I wouldn't expect you to review it de novo. In your brief, I thought that's exactly what you were expecting us to do. It is what you said in your brief. In the sense that the court has to look at the 3553A factors on its own, that review requires some independent judgment. Which court are you talking about? Are you talking about the district court or the court of appeals? I'm talking about the court of appeals. Where do you get that from? The court of appeals review is for unreasonableness. Yes? Yes, it is. So why shouldn't the court of appeals simply be reviewing for whether the district court has given a reason for the sentence that is founded in the 3553A factors and in the record? The district court or, excuse me, the appellate court is charged both by Booker and by the statute to look at the 3553A factors. Those are the factors that govern sentencing. We want to know whether the district court applied their own standards. Only if those factors are a factor in the sentencing in the district court. Yes. But we come to, and I'll refer you to Judge Sirica's, the Chief Judge Sirica's opinion in the Cooper case. As appellants, we come to you, the appellate judge, saying we already bear a burden to prove that what the district judge has said is a reasonable sentence is not a reasonable sentence. I'm sorry? This is Judge Berza. I thought your position was that the reasonable sentence standard is not standard in the district court, and that's where your principle of parsimony argument comes in. Rather, we are reviewing for the ultimate result in the district court for reasonableness, which is sort of a la etta, it seems to me. But the standard in the district court, regardless of the supervising standard, is the principle of parsimony, and the fact there's not some reasonableness standard at the district court level. Is that not your argument? And if it isn't, why not? Well, no, it is our argument. Our argument has always been that the district court has nothing to do with reasonableness. It must adhere to the plain language of the statute. And the plain language of the statute tells the district court exactly what it must do. But then why are we reviewing for looking at what a reasonable sentence would be, rather than whether the district court's conclusion about what meets the principle of parsimony in the 6.355.3a factor was reasonable? If I understand Your Honor's question, I think those are two sides of the same coin, in the sense that the appellate court looks at the 6.355.3a factors independently and determines whether or not those factors call for a different range of reasonableness with respect to a sentence. Could the standard of review, leaving aside interpretation of the guidelines, which I think would be noble, and I believe the government agrees with that, the appellate court in making its determination of reasonableness as to the district court sentence, is it your view that our review is de novo on the reasonableness question or abuse of discretion? It is de novo in both. It is de novo in this sense, that there's an independent requirement that in applying the reasonableness standard across the board, the court of appeals look at the 6.355.3a factors. If the court looks at those factors and determines that the district court sentence falls within the range of reasonableness, that's game over. And de novo or abuse of discretion? Well, in the sense that if the appellate court says our look at 6.355.3a indicates that the range of reasonableness here could fall anywhere between 15 years and 25 years. The district judge is sentenced at 20 years. We're not going to challenge the judge's discretion to sentence within that range. That's the part that's similar to abuse of discretion. That's it. Was the Supreme Court in Booker giving district courts more discretion or less discretion in sentencing? It was giving the district courts significantly more discretion. If it's giving them more discretion, then once we have a system that's clear as to the procedure that should be replicated in each case by a district judge, would we not review the district judge's application of that for abuse of discretion? No, because of the court's independent duty to look at the 6.355.3a factors. I'm not clear where you're getting the reviewing. I don't think Justice Breyer was saying that the reviewing court has a duty to independently look at the factors, but the reviewing court has an obligation to do is to ensure that the factors that were considered were applied in a reasonable manner, which gets me to one of the other issues that we asked for briefing on, which is what do we need from the district court in order to be able to make a decision that it was a reasonable or an unreasonable sentence? Do they need to recite each of the factors, rehearse each of the factors, to say they considered the factors, and what do you suggest you need to do? I'm getting it from Justice Breyer's opinion at 261. Those factors, referring to the 3.553 factors, in turn will guide appellate courts, as they have in the past, in determining whether or not a sentence is unreasonable. With respect, Judge Worla, to what the district court must do, for over a decade, this court has been clear about what 3.553c, simpliciter, requires. I'm referring to U.S. v. Conkins, 9F.3rd, 1377, from 1993, and the court there said that the district court must, and this is pre-Booker, the district court must expressly state in open court with adequate specificity the reasons for its sentencing decisions. Counsel, why isn't it enough? When I look at the 3.553 factors, nature and circumstances of the offense, history and characteristics of the defendant, seriousness of the offense, deterrence, and so forth, those are all the things that the sentencing commissioners are supposed to take into account, and that whole sentencing commission remains in place after Booker. The whole guidelines formulation process remains in place. Why isn't it enough of a reason, taking into account the 3.553 factors, if the district judge says this is in accord with the sentencing guidelines, which take into account the 3.553 factors? The most direct response, and I need to reserve my time for rebuttal and respect my co-counsel's time, but the most direct response is that that would render the other provisions of 3.553A superfluous. Which one of the 3.553A factors is not taken into account in the formulation of the guidelines? The history and circumstances of the defendant and the specific circumstances and seriousness of the offense. As I remember, those are the main things. It's the very first one. As I remember, that's exactly what the guidelines do. They have that graph with the history on the X axis and the offense characteristics on the Y axis. And I would refer you then to Chapter 1, Part A of the guidelines, where the commission itself explains in setting forth the guidelines that although it was mandated to do that, it was unable, because of the complexity of that, to consider all of those factors. And as Your Honor has doubly heard or read, there are numerous factors that would pertain to the history and circumstances of the defendant that the guidelines themselves discourage. Does this mean that a district judge could say, I don't believe in sentencing any people in this class to prison time, or I think that everybody who commits this offense should be maxed out because of the seriousness of the offense? No. That would be not to do the individualized sentencing that 3553A requires. And to the extent that the government argues in its brief that it would be improper for a judge to, as a policy matter, disagree with the policy in the guidelines as simplistic for all cases, we agree with that. Just as if a judge were to say, I think the longest prison sentence is going to satisfy the purposes of deterrence, regardless of the specifics of the case. You should watch your co-counsel argue in that case. Thank you. Good morning. Dennis Charney, representing Appellant Zavala. A sentence within the guideline range should not be presumptively reasonable, because a presumption that a guideline sentence is reasonable is no different than treating the guideline as mandatory. That said, since the guidelines are themselves one, or actually be comprised two, of the factors, never mind that they subsume the rest of them. The guidelines in the policy statements are two of the 3553A factors. Yes. So a sentence within the guideline range is generically acceptable. On a generic sense, that is true. Okay. But if we presume that the guideline sentence is the reasonable sentence... Well, it is a... In the fault of any other articulated reasonable sentence founded in a 3553A factor, because a guideline sentence is itself a factor... Is one of the factors. If it is a factor, then it's almost, by definition, an acceptable sentence. That would be true as long as the evidence demonstrates, the transcript demonstrates, that the district court took into account all of the 3553A factors and at least weighed them independently. I guess those factors are called to the district court's attention in some way that either party says should create a sentence that is consistent with the parsimony principle. This is true. But what we talk about when we talk about these issues of a presumption, and we compare a presumption that the government wants this court to adopt versus the mandate that Booker has rejected, we know and we can see that when we have the issue of a presumption, we have a requirement that the defendant engage in some type of courtroom activity to change the mind of the individual with whom the presumption exists. And that's exactly what happened under the system when we had the mandatory guidelines, for example. What I've been seeing in cases is that the district court will say, I've calculated the guidelines and here's what they are. And then the court says to both parties, now tell me why I shouldn't impose that sentence. That is true, which I think is, again, placing inordinate weight on the guidelines. In the Hunt decision, I don't know if that was the 11th Circuit, but one of the other circuits had a transcript of a district judge who said precisely what Judge Wardlaw said, and the court said it rejected a presumption of validity, but it was going to uphold that sentencing colloquy because although it was close to a presumption, it wasn't giving presumptive weight to the guidelines. It was giving the parties a chance to explain why the guidelines shouldn't be followed. Correct, and the problem that we have in this case and what the government is attempting to get this court to hold is that a guideline sentence should be presumptively reasonable on review and should be the presumptive sentence to be imposed by the district court. And a presumption and a mandate are basically the same thing, just wearing different clothing. It is, in fact, a de facto mandate, a de facto sentencing guideline obligation that Justice Scalia even commented on in his dissent. Why are presumptions rebuttable, a mandate isn't? Actually, the mandate that the guidelines should be followed pre-Booker still authorized some exceptions when you could get out of the mandate, and the presumption that the government wants you to adopt at this point in time also still requires the defendant or the government, if it wants to go upward out of the departure, out of the guideline range, to rebut the presumption that the guideline sentence is the appropriate sentence, and that is to the disparity of the parsimony provision, which says that each one of the 3553A factors needs to be held in check with Congress's mandate. Mr. Chaney, I never got an answer to my question from Mr. Green. Let me give it a try. Let's say we have a case where the district judge looks at it and says, I think that this is a case where the sentencing guidelines are particularly persuasive. I'm going to give them presumptive weight. I'm going to give them special weight. How do we review that on that deal? As long as the district court has also considered the other 3553A factors, I think that that would not be an inappropriate conclusion for the district court to reach, because sometimes the 3553A factor will have far more significance than another. Sometimes it will have no bearing at all. And so the age of a defendant now can be considered. Let me make my question more specific. Maybe the reason I'm not getting an answer is because the question is unanswered. Do we look at the process by which the sentencing guideline was created? I mean, when the district court says, I give deference to the guidelines, it is saying something about this case, but it's also saying something about the particular guideline to which it's deferring. Now, heretofore we have not had a necessary review of Chevron deference, and all of those things that go into reviewing regulations don't apply to guidelines. We have accepted them as basically words from God. They are what they are, and we apply them. I am wondering, though, under the current regime, whether we need to go behind the guidelines and look at the factors when adopting a particular guideline and how we treat a decision to defer to them. Is that a factual question? Is that a legal question? Is that a question of discretion? I don't think that this court in a reviewing capacity should be looking into all of the history and looking behind each and every one of the particular guidelines that have come into existence. I think that that would be an onerous burden for an appellate court review. I think that the simple test for an appellate review is just. . . You think we just don't have the time, that's the reason? Well, I think it would be particularly onerous, but I don't think that that would be the purview of an appellate court. We have one minute left for rebuttal. That's all right. We'll give you each a minute on rebuttal. All right. Was there a question there? Yeah, I have one. I don't understand why the logical conclusion of your position is not simply a return to the pre-November 1, 1987 practices. And I think your trouble in answering our questions on how we review these sentences is that there's nothing left by way of standards if we don't give some significant weight to the guidelines. Your client was facing, as I calculated, zero to life in prison. If Judge Windmill had gone through all the factors and given a reason why he thought that a sentence of 50 years would be appropriate, based on your argument, that should be sufficient and essentially untouchable on appeal because he's done what the statute requires him to do. So long as he has not treated the guidelines as mandatory, which it appears that a review of the transcript in total is what occurred in that case. But you wouldn't like it if the guideline range had a maximum top of 27 years and he chose 50 but carefully articulated each of the other factors in A as to why he thought 50 years was appropriate. And that is the razor's edge in this argument for both sides. The point is that the government is also under the constriction of a presumption under Judge Windmill's decision in this particular case. And it is neither the government nor criminal defendants who should be operating under strictures. The government and defendants together should be able to come into court and fully explore all of the 3553A factors without the court having a particular emphasis on one before we even go into court and making those types of decisions. Okay, I think that that's a good cue to hear from the government. Thank you. Thank you. We will give each of you a minute on rebuttal. Thank you, Chief Judge Schroeder, and may it please the Court. My name is Michael Dreeben, and I represent the United States. It's an appropriate point of departure in trying to figure out what weight the guidelines get in the advisory guidelines process to look at four critical features of Justice Breyer's remedial opinion for the Court in Booker. First, Justice Breyer said, and I think all members of the Court agreed with this, that Congress's basic purpose in enacting the Sentencing Reform Act with the guidelines structure was to move towards increased uniformity in the federal sentencing system. That's at page 253 of the Booker opinion in the U.S. report. Second, Justice Breyer said that although Congress's goal cannot be achieved to the extent that Congress desired it, since mandatory guidelines were no longer an option, the remedial solution that the Court adopted would continue to move the system in Congress's preferred direction. That's at page 264. Third, Justice Breyer explained, again at page 264, that the reason that the remedial system would continue to have this effect of moving in the preferred direction of uniformity is that the Commission would continue to sit, writing guidelines, encouraging the better practices, reviewing the work of the Courts of Appeals, and thereby disseminating to all federal judges its views on those matters. And second, appellate review for unreasonableness would provide an additional check. And the fourth point that the remedial opinion made that I think is critical here is that, Justice Breyer said, appellate review would tend to, quote, iron out sentencing differences. That's on page 263. But what Justice Breyer also said, which weighs heavily against making the guidelines presumptive or giving them substantial weight, is that he said that the district courts must consult and take into account the guidelines. He didn't go anywhere near where some of the courts are going these days. And further, he said that we must consider the guidelines together with district courts, must consider the guidelines together with all of the other factors, which would undermine giving them any sort of substantial weight over the other factors. And he didn't see that as inconsistent with continuing to maintain Congress's goal of uniformity. Well, I don't see that what Justice Breyer said is inconsistent with the goals that he said that the remedial system would achieve, but I also don't think that it's inconsistent with giving the guidelines weight as what I would describe as an organizing principle for sentencing courts and appellate courts. And the reason I say this is because one of the mandates in Section 3553A, subpart 6, is that Congress directed courts to the need to avoid unwarranted disparities between defendants who have committed similar offenses and who have similar records. Well, counsel, when you describe your first point of what Congress's goal was in moving, what Congress wanted to move toward, you omitted the second half of Justice Breyer's sentence, which is that Congress wanted to move sentencing in Congress's preferred direction, helping to avoid excessive sentencing disparities, as you mentioned, but you didn't mention while maintaining flexibility sufficient to individualize sentences. That's also important and important if we're going to consider this, not just half of the objectives. That's right, Judge Reinhart, and I think that the only way that those two objectives can be achieved and be harmonized is if all actors in the system are at least beginning from the same starting point, and that is the sentencing guidelines range. I'd like to stop right where you said the starting point. Isn't that really what the guidelines are intended to be at this point? It's simply a starting point? And what the government would like us to do is to turn the starting point into a presumption. My question is, even if you take each of Justice Breyer's statements, is there anywhere in the Booker opinion that says the guidelines should be given a super weight or a presumptive weight? The opinion does not say explicitly either of those things, but I think that the fair way to translate federal sentencing into an advisory system is to give the guidelines special weight. There are at least three critical reasons why that is so. But wouldn't Justice Breyer have said that if that's what he or the court intended in this remedial opinion? The remedial opinion doesn't say anything about it. It really put the problem back in the lap of the lower courts. Which reduces the weight of Justice Breyer's hopes and expectations, the ones you rely on. What it really says is we have to go back to the statute. Justice Breyer obviously said things that he expected or hoped would happen, but there's nothing in his opinion. And since you have said he expects us to go back, what is in the text of the statute that suggests that the sentencing guidelines are any more than one of several coordinate factors to be consulted somewhere along the way, not necessarily at the beginning or the end, and not necessarily to be given any particular weight? The statute doesn't address the process, and it couldn't, but I do think that Justice Breyer's remedial opinion does far more than simply describe expectations. It was critical to the remedial opinion's conclusion. But you have conceded that he didn't actually analyze the statute or have the matter presented to him, and you also conceded that he expected us, the lower, inferior federal courts as they were called, to go back and do that analysis ourselves. The only way that the court could conclude... You did say that. What the court did say, Judge Kaczynski, is that the only way that the act could be deemed to survive and have its provisions continue after severing the two provisions that were severed would be if it would continue to move in the direction that Congress' aims were for the Sentencing Reform Act so that the statute wasn't transformed into something totally different that would thwart Congress' original objectives. And that's why the features of the opinion that I pointed to, I think, are critical in giving signals about how the guidelines function in an advisory... So let me just make sure I understand. You, on behalf of the United States, take the position that the statute itself gives no particular additional weight to the guidelines. If we have to derive it that the guidelines have special weight or presumption or anything of that sort, we have to look to Justice Breyer. No, I think that the statute itself structurally, particularly considered against the background of the sentencing... Okay, why don't you explain that. The Congress created in the Sentencing Reform Act not only the process for sentencing but also a commission which was empowered to consult with all actors in the federal criminal justice system, review how sentences have been imposed historically, consider the purposes of sentencing. But it had very different hopes for that commission when it drafted it, hopes it can no longer be achieved. What is it about the statute itself, if you are now looking at it with the section 3553B excised, that would give one a hint? Let's say we didn't know what the Supreme Court had said in Brooker. We've simply been told 3553B is gone. What is it about the statute that would give us a hint that one of these factors, namely the fourth one, is to be given a special particular weight? Well, I think there are several features of the statute that lead to that conclusion. Critically, the court is obligated to consult and take the guidelines into account. Critically, the guidelines are the product of the process that I previously described, which drew upon the commission's experience and expertise, 18 years of refinement of the guidelines. And critically, one of the goals, and I think everyone agrees that it was the crucial goal of the Sentencing Reform Act, was to move the sentencing process away from the area where every federal district judge had plenary discretion to decide sentencing policy and move to a system in which federal judges were operating on more of the same script. And that's reflected textually in 3553A6, which requires judges to focus on the need to avoid unwarranted disparities. There is literally no way that that could be accomplished unless federal judges are prepared to calculate, consult the guidelines ranges, take them into account. Is that more important than the need to afford? I mean, I understand, and I don't want to again say the importance of unwarranted sentencing disparities, whatever unwarranted means, but is that more important than to afford adequate deterrence, for example, or perhaps to reflect the stages of offense, or to provide the defendant with needed educational vocational training? Those also seem important goals, and why should they be subordinated to this other factor? I don't think it's really a question of subordinated. I think it's a question of how can a sensible sentencing system be achieved that gives some weight to the need to avoid unwarranted disparities while individualizing the sentence, as Judge Reinhart pointed out, in light of the particular characteristics of the defendant. And I think the way that that is achieved is precisely what the judge did in the Zavala case. Let me just ask, if a district court judge truly consults the guidelines in thinking about the sentence to be imposed on a particular individual in front of him, why doesn't that help or tend to avoid any real disparity that might result between judges? I mean, if you take the direction seriously as a district court sentencing judge and truly consult the guidelines and all the other 3553A factors before imposing sentence, why doesn't that deal with your concern about disparity? Well, it should, Judge Paez, especially to the extent that a judge not only consults them but recognizes that they have a special force. Well, you know, when you start out a sentencing, the district court judge and counsel have the pre-sentence report in front of them. That's right. And in that pre-sentence report, you start out with the guideline calculation. It's right there with the history and background of the defendant and the recommendation by the probation officer. Everybody starts out on that page. And they also start out with a recommendation from the probation officer, which also zeroes in on the guideline. That's right. So practically speaking, all of that information is in front of the district court judge. That's right. And you use the term organizing principle, and to some extent I kind of agree with the notion that the guidelines do provide the district court judge with a way of organizing his or her thinking about what the sentence ought to be. Well, I think, Judge Paez, we're in large agreement on this, and part of the problem that I think has come up in the discussions, including in some of the opinions of courts of appeals, is by using words like presumption that mean different things to different people. But as I understand the government's argument, as we saw in Zavala at the panel level, was that the guideline calculation becomes the presumption, and it's up to the defendant or the government, for that matter, to persuade the district court judge to either deviate, whatever terms you're going to use, depart. And it sounds like you're back to where we were before Booker. No, it's not back to where we were before Booker, because the judge not only has an obligation to consider all of the 3553A factors, but the judge is not limited by the strict limitations on departures that existed in the mandatory system. The judge has considerable legal freedom. But from an administrative point of view... Do you agree that the concept of departures downward or upward is obsolete after Booker? No, Judge Wardlaw, I don't think it could possibly be obsolete, because the departures are part of the policy statements of the guidelines, and the statute itself says that the district court must consult both the guidelines and the policy statements. Are they the policy statements that are within Section 5? I thought those were very specific policy statements, the ones having to do with probation and parole, and other policy statements are not within 3553A. Is that wrong? I did not understand the statute to work that way, Judge Berzon. I understood the statute to require the courts to look at all of the policy statements. And that is helpful because... But it says any policy statement issued by the Sentencing Commission pursuant to Section 99482 of Title 28. Well, I don't have it in front of me at the moment, Judge Berzon, so I'll defer to you if you do. But the guidelines include both guidelines and policy statements, and for a court not to look at them I think deprives it of valuable information. But 3553A in the list doesn't appear to me to include the policy statements that are other than the particular ones that are in 5. In other words, they deal with the guideline ranges and they deal with particular policy statements. And the rest really in the statute are outside 3553A. Well, my understanding is that all of the policy statements are informative and relevant to the application of all of the guidelines. And the departure guidelines and departure policy statements have to be read as an integral matter because the Commission, when it's designed to the guidelines, recognizes that they describe a heartland of typical cases, but they don't describe every case. Mr. Dreeben, this is Judge Silverman. I wonder if I could ask you to discuss the adequacy of Judge Strand's remarks at the sentencing for Mr. Carney. Well, let me start by saying that I think as an appellate lawyer and as an appellate court, all of us would prefer if the sentencing judge says more than was said in that transcript. The question is whether what the judge did on the entire record fails to satisfy the legal obligations that are imposed upon the judge by the Sentencing Reform Act. The Sentencing Reform Act imposes two legal obligations. One is under 3553C, a judge who sentences within the guidelines range has to state the particular reason for the sentence. There are greater burdens of explanation if the judge goes outside the guidelines range under 3553C, but that's not what happened in Carney. Why is C limited? I'm trying to read this post-booker. Why would C be limited to the imposition of sentencing guidelines sentence? Because it just reads where it reads. Statement of reasons for imposing a sentence, the court at the time of sentencing shall state in open court the reasons for its imposition of the particular sentence. And then it discusses guidelines issues, but no one said anything about abrogating the requirement of the district court stating its reasons. There's no abrogation of it. I think we agree on that. There's a more specific obligation if the judge goes outside the guidelines. Where does that come from? 3553C. It's the next sentence after the one that Judge Wardlaw read. It says that the judge has to give the specific reason for sentencing outside the range if that's what he does. But there's that obligation, and the second obligation is an obligation to consult and consider all the factors in 3553A. The statute does not say that the judge has to do that on the record in some particular formulaic manner. Assuming that that's correct, the problem in Carney is that the defendant did make a pitch for an individualized sentence that was not the guidelines sentence based upon and I can't remember them all, but in effect based on age and family circumstances and some other things that squarely could fit within one of the 3553A guidelines factors. And the district judge didn't make any comment at all about it. Didn't accept them, obviously, but didn't explain why he rejected them. So why isn't that, even if you don't have to have a checklist approach, sufficient to require reversal? Well, Judge Ryburn, let me say first why I think that the court can affirm and then explain what I think the court should do if it believes that more needs to be said than was said in Carney. I think that the court can affirm because it's a reasonable inference from the record in this case that the judge did what he did because the defendant came in with having been convicted of severe sexual abuse of a minor situation, denying his guilt, continuing up to the time of sentencing to deny his guilt. He offered a variety of mitigating factors, which primarily had to do with his disadvantaged upbringing, his mental capacity, and the fact that his family depended on it. And he brought a lot of family members in. And the judge sat there and listened to all of this. And he said he considered all the papers that had been filed. He considered the PSR, which had recommended a sentence at the top of the guideline range, 293 months. And he instead imposed a sentence at the bottom of it, 235 months. I think the court can infer from the process of reasoning and the two things that he did say, which is number one, the jury's verdict binds me, and number two, the family support that you have is unusual, it's good to see, and it's going to help you, that he concluded that the severity of the offense conduct properly put the defendant within the guidelines range where he had enhancements, for example, having somebody under his care in custody, but that the defendant's family support constituted a mitigating factor that should negate what the probation office had recommended. Now, that's what I think the court can infer. If the court concludes that either as a matter of Section 3553C or as a matter of its supervisory powers, more is required to explain what a sentencing court can do, then I think it should be careful to avoid a situation in which it's requiring sentencing courts either to do a checklist of the 3553A factors in every case, even if no party has adduced any particular fact that matches onto one of them. And I think it should also avoid requiring district courts to have to respond to every argument that a defendant makes, no matter how weak or no matter how implausible in the particular context. A rule of reason should apply, something along a sliding scale. If a defendant offers reasons that appear to the appellate court on their face to be particularly powerful, then an explanation would seem appropriate. If the reasons are very customary and typical that are offered in a particular kind of case, then a judge who passes over them in silence should no more be faulted than this court would be if it affirms by memorandum opinion or without addressing every argument that a defendant makes. Mr. Durian, if we get back to this idea of setting off the sentencing guidelines versus other factors, how does the district court know what way to give them in a particular case? Does the court or do we have to go behind the guidelines and see what the sentencing commission considered, whether it itself gave added consideration to some of the 35 fiscal year factors, and therefore these factors are already incorporated in the guidelines range, or do we sort of accept them? I mean, we know very well that some of the factors are not considered, are not incorporated at all, in the sentencing guidelines for particular crimes. Well, I think, Judge Kaczynski, you have to take the guidelines as they're written. This court wasn't empowered with- Why is that? So the court conducted administrative review of the guidelines. This is not an HEA type of review. Well, I understand that, but you are saying what the government's position is, you look at the other factors and you set them off against the guidelines. You have to sort of see whether there is a good reason to, for example, consider adequate deterrence in a particular case. But how can you tell if you don't know what consideration the commission gave in building the guidelines, you don't know how that particular factor was considered at all, what deference to give it in deciding whether to look at deterrence in this particular case? I think it's entitled to deference because Congress charged it with the mission of constructing the guidelines based on Section 3553A factors as described. It's not Chevron deference, is it? It's more than Chevron deference. This is not a situation in which this court or any regional court of appeals is empowered to say, this guideline failed the mandate that the commission would have. Why not? We should give your co-counsel a chance to. I'm arguing for the government for the entire time. You're arguing for both of them. I have another question for you about the guidelines. If the guidelines are calculated, they have to be considered or consulted to go to the district judge. But if they're calculated and they're taken, let's say, as a starting point and the district court thereafter considers all the other factors under 3553A, I don't see why any of the congressional goals that you mentioned require that a presumption of validity be given to the guidelines. In other words, if they're consulted, if they're considered, and then the district court goes on to consider the other factors, why do we need to have a presumption? Judge Gould, if you're talking about reviewing the sentence on appeal. The district court in the first place. I think that the reason is it helps to operationalize what I mean by giving a guideline special weight as opposed to talking about labels like presumption, which I think can be a little bit distracting. What I mean by that is the judge should start, and I think as Judge Reimer described it, the guidelines have been constructed with an effort, not a perfect effort, but an effort to take into account standard sentencing practices as modified by policy concerns. And they provide a basis that all federal courts can use to begin. I understand that. And that's why in Cantrell, I wrote an opinion saying they should be a starting point. Well, the NBANES panel may not continue that. But if they are a starting point and you begin with them, why do we have to give them a presumption? Well, I think I was trying to describe that the use of that term is distracting. What I think that the judge should do is recognize that the further away the judge goes from the guidelines range based on consideration of history and characteristics of the defendant, for example, the more risk there is of unwarranted disparity in the system, which would contradict one of the goals of the statute. And so what the judge should bear in mind is that the farther away that the judge is considering sentencing from the range, the more compelling the reasons should be. He should keep in mind that there's a spectrum of offenders that exists under any statute. As Judge Tallman was describing, the criminal statutes have very wide ranges for sentencing typically. That means that Congress necessarily expected that the same statute would encompass the very worst defendant as well as the one whose culpability was very least. And unless there is some rational effort to stratify defendants within that range, according to reasonable estimates of their culpability, the sentencing system would literally be chaotic. It would require, and I think this is really in the end what the defendant's position reduces to in these cases, it would require either every district court to construct its own personal sentencing guideline system, giving weight to factors as it thought best, or to function in an ad hoc manner with no law whatsoever. Counsel, isn't that exactly what Booker did? By taking away the mandatory guideline system, it gave discretion back to the district court to sentence every day and told them, according at least to Justice Breyer's opinion, that they need to look at all these factors and the individual defendant that is before them and how those characteristics fit within that scheme. And what's wrong with that? By taking district court judges' discretion to look the defendant in the eye, read the background, consider things that are prohibited under the guidelines, and do a sentence in their judgment is the best sense to achieve the goals as Congress set forth in Section 35 of the TPA. Well, I think that that would not only contradict the Booker remedial opinion, it would also make appellate review impossible, and it would result in the very system that the Sentencing Reform Act was designed to address. It would put all federal judges in the position of making their own best judgment about how the various abstract sentencing policies bear on a particular individual. It's in the statute what they're supposed to look at. It's not abstract. I think it's highly abstract, Judge Wardlaw, to say how much punishment is just punishment for offense. If we took a poll of each of us in this room, we would each have a different view about how severe a particular crime is. You might have to deal with mandatory guidelines, which is really what you're saying, but why should we go beyond what Justice Breyer said? You know, he's a very able, skilled jurist who convinced five justices to undo what they had done in their first opinion. And then he set forth, or at least he convinced one this week, but then he set forth what we should do with the remedial, and this remedial opinion. And he didn't say what you said. He didn't say there should be presumptions or special weights or don't deviate except in compelling circumstances. He told us exactly what the district courts should do. He said they must consult the guidelines and take them into account. Well, that's exactly what the district courts should do. They should consult them, take them into account, along with the other factors. And why do we have to go beyond that? Well, first of all, that's not exactly what he did say. He said consult and take them into account and tailor the sentence in light of the other factors. Clearly, Justice Breyer envisioned that the guidelines were going to continue to play a central role in meeting Congress's critical goal. Let me ask you an overly simplistic question. If on a scale of 1 to 10, if 1 means that you don't have to look at them at all, the district court doesn't have to look at them at all. They're just out there if it wants to. And 10 being that it's a conclusive presumption, the guideline sentence is a conclusive presumption, where in that scale do you think they fall? Chief Judge Schroeder, I haven't attempted to quantify how much weight the guidelines get, and I'm afraid that anything that I say on this is going to be misconstrued by one side or the other. With all respect, what I would prefer to say, rather than attempting to impose a numerical quantification where none exists, is that the prescription of simply taking the statute, having the sentencing judge look at all of it, and do what the judge thinks best is basically a recipe for the old system that the sentencing would format. Mr. Dreeben, isn't that the rationale for why it was okay not to go the Blakely route, essentially that it was a reconstruction of the earlier system? It was a reference to the earlier system that it would explain why it is that the apprentice Blakely rules don't apply to advise an advisory guideline system. No, Judge Berzon, that can't be right, because if it were, then the court would have had to conclude that the retention of the act with various subsections severed would not help to move the sentencing system in the preferred direction. It might go in the direction, but only mildly so because of the constitutional constraints. Well, I don't know how the mildly, I guess, gets to the question of whether we're talking on Chief Judge Schroeder's scale of a two or a seven, and I think that the fact that the court enjoined the appellate courts when it gave them the mandate to review for unreasonableness with the goal of ironing out sentencing differences, it makes it pretty clear that the court had in mind a system in which the district judge would be guided at the outset by the expert judgment of the commission, which gets a systemic wide view of the criminal justice process, not just the lens that you get looking at one individual. Okay, so what is the constitutional explanation for why this is constitutionally valid if, in fact, what we have is a set of, insofar as the commission rules were simply a compendium of experience, that would be one thing, but as you said earlier, that isn't so. They also encompass a number of policy determinations that are independent of what judges would be doing on their own. That being the case, why aren't we back into a constitutional problem? Don't we start giving them any special weight? All right, you may answer the question, and then we'll have to thank you. I'll try to answer the question by closing where I started, which is talking about the Booker opinion, and to answer Judge Berzon's constitutional question, on page 234, I believe, of the Booker opinion, the court describes why the departure mechanism was not adequate to save the guidelines, and the reason it was not adequate is that departures under the mandatory system were not available in many or most cases. They were rarely available. They were usually legally precluded. That's reason number one, because that's no longer true. In most cases, a judge could look at the history and characteristics of the defendant and the nature of the offense and conclude that a sentence that's not the guideline sentence is a reasonable sentence. We don't dispute that. The second feature of the revised system that saves its constitutionality is that the organization of when a judge has been unreasonable in sentencing outside the guidelines is left to the appellate courts. It's not mandated by a statute. It's not a legally enforceable rule that's provided by Congress. It is the Article III branch itself giving a second level of review to what is a reasonable sentence in view of the district court's discretion. Thank you. Thank you. If I may, Your Honors, just a few quick points. How many come up? With respect to the question just asked about where the constitutional line is, I want to answer a question from Judge Valle and also from Judge Berzon. Even a rebuttable presumption the government concedes could be, if it were, a rebuttable presumption of unreasonableness so akin to a mandatory system that Booker would be violated again. We would maintain that there is no difference between a presumption of reasonableness on the one hand and a presumption of reasonableness within guideline sentences and a presumption of reasonableness for outside guideline sentences. Take a simple example. You tell me that the presumptively reasonable cab fare or a cab tip is $10. That says something about $9 and $11. And if the question comes in, well, why is $9 unreasonable or why is $10 reasonable, the answer is the same. There's a burden on the defendant to respond. There's a higher evidentiary burden that the defense must hurdle at that point. Yes? Sorry. Judge Tolman, I want to recommend to you the Radovaldi decision from the Second Circuit, 4F2F3R127, where that demonstrates quite clearly in a circuit where there is no presumption of reasonableness on appeal how a court can look at it and how it is that sentencing is not unbounded in the way you described. Judge Reimer, you raised an excellent point about plain error on review. And I would not be honest if I didn't come here and say to you that that is actually an unasked question by this court. If counsel fails to object below and then, on the other hand, new appellate counsel comes in and says, well, there's this huge 3553A consideration, do you apply plain error to that standard? We would maintain in thinking about this question in advance of here today. The answer is no. And the answer is no for an important reason. The sentencing colloquy is exactly like a Rule 11 colloquy in the respect that the district judge is mandated to do certain things. The district judge shall consider, shall impose. The Rule 11 colloquy says the same thing. Rule 11H says that variances in the Rule 11 colloquy should be reviewed for harmless error. We would maintain that that would be the proper standard, that it would be harmless error. Because it is an independent duty of the judge to apply these factors. It's not whether this is hearsay evidence or not hearsay evidence and counsel objected to it or didn't object to it below. An independent duty. Are you taking the entire rebuttal time? I am. I am. I am. And Judge Gould, your point about, well, and Judge Wardlock, where do we start? You've written an opinion saying it's okay to start with the guidelines. And all of the arguments about the guidelines advancing uniformity, the guidelines being in alignment with other factors that the district judge picks them, I would recommend Judge Sutton's concurring opinion in Buchanan. That's all very well stated. But it's a non sequitur to then say we need a presumption. Why is a mechanical presumption necessary to demonstrate that the guidelines have some virtue, that they are the pronouncement of a wise commission with respect to law sentences? How do we control the problem of a district judge who's a maximum John or a squish, as practitioners tend to call them, but who's intelligent, learned in the law, and carefully articulates 3553 reasons for the sentences that consistently come out way at the high end or way at the low end? You may answer the question, and then we'll have to call time. I think by looking at the 3553A factors and determining the court has to do its independent review. Doing that independent review and looking at the 3553A factors and determining whether that sentence falls within the range of reasonableness. Reasons can be attacked. And reasons are not, to answer the Cardi question, if I may, very briefly, reasons are not the same thing as conclusions. Thank you, Your Honor. The cases just argued are submitted for decision. That concludes the court's calendar for this morning.
judges: Schroeder, Reinhardt, Kozinski, Rymer, Kleinfeld, Thomas, Silverman, McKeown, Wardlaw, Gould, Paez, Berzon, Tallman, Bybee, Bea